UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON GOODE,
   *Plaintiff*,

v.

ROLLIN COOK, ET AL.,
   *Defendants.*

No. 3:20-cv-0210 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Jason Goode ("Mr. Goode") is an inmate in the custody of the Connecticut Department of Corrections ("DOC") and is currently placed in Administrative Segregation ("AS"), or solitary confinement. He has sued several current and former DOC officials and staff, including Kristine Barone, Ellen Durko, David Maiga, Giuliana Mudano, Angel Quiros, and Andrea Reischerl (collectively "Defendants"), alleging that his conditions of confinement, namely being placed in solitary confinement at the Norther Correctional Institution ("Northern") and the MacDougall-Walter Correctional Institution ("MWCI") from January 2019 until the present, violate his Eighth Amendment right against cruel and unusual punishment.

Defendants have filed a motion for summary judgment arguing that Mr. Goode cannot show personal involvement of the Defendants in any alleged violation, that Mr. Goode failed to establish the elements of his Eighth Amendment claim, and that Defendants are entitled to qualified immunity. *See* Defs.' Mot. for Summ. J. at 1, ECF No. 126 (Nov. 18, 2022) ("Mot."); Defs.' Mem. in Supp. of Mot. for Summ. J, ECF No. 126-1 (Nov. 18, 2022) ("Mem."). Mr. Goode opposed the motion. *See* Pl.'s Opp'n, ECF No. 132 (Dec. 15, 2022) (Opp'n).

For the following reasons, Defendants' motion for summary judgment is **GRANTED.**

1

I.  FACTUAL AND PROCEDURAL BACKGROUND

    A. Factual Background[1]

        1. The Parties

Mr. Goode, an inmate in the custody of the DOC, challenges his conditions of confinement, namely being placed in AS or solitary confinement at Northern and MWCI from January 2019 until the present. *See* Defs.' L.R. 56(a)(1) Statement of Material Facts, ¶¶ 1, 4, ECF No. 126-2 (Nov. 18, 2023) ("Defs.' SOMF"); Pl.'s L.R. 56(a)2 Statement of Material Facts, ¶¶ 1, 4, ECF No. 152 (Feb. 7, 2023) ("Pl.'s Am. SOMF").

Defendant Barone ("Warden Barone") previously served as the Warden of MWCI from April 2019 until April 2022, at which time she retired from the DOC. Defs.' SOMF ¶ 18. Warden Barone has never been stationed at, or assigned to, Northern, nor has she ever had any involvement in, or control over, the conditions of confinement at Northern. *Id.*

Defendant Mudano ("Warden Mudano") previously served as the Warden of Northern until November 1, 2019, at which time she retired. *Id.* ¶ 21.

Defendant Reischerl ("APRN Reischerl") was previously employed by DOC as a Psychiatric Advanced Practice Registered Nurse ("APRN") until her retirement from the DOC on August 1, 2020. *Id.* ¶ 24.

Defendant Durko ("Nurse Durko") was a registered nurse who worked at Northern. *Id.* ¶ 35.

---

[1] The facts are taken from Defendants' Local Rule 56(a)(1) statements, Mr. Goode's Local Rule 56(a)2 statement, and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

### 2. Administrative Segregation or Solitary Confinement

Under the DOC's Administrative directive 9.4, Administrative Segregation or "AS" is "status for inmates whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and that inmate can no longer be safely managed in the general population." *Id.* ¶ 37 (internal quotation marks omitted). AS is a three-phase program, with phase 1 being the first phase and phase 3 being the final phase, and an inmate progresses through each phase of AS contingent on successful completion of the specific program components in accordance with unit policy. *Id.* ¶ 39. Reviews of inmates on AS, and decisions concerning whether an inmate will progress to the next phase of AS, are conducted at the facility-level by facility staff. *Id.* ¶ 41.

Facility staff, however, do not have the ability to remove an inmate from AS, they only can recommend removal, as the ultimate determination of whether an inmate will be removed from AS is made by the Director of OCPM, which would occur only after there is a facility-level recommendation for removal. *Id.* ¶ 42.

Between 2019 and the present, AS inmates were housed at Northern, MWCI, and the Garner Correctional Institution ("Garner"). *Id.* ¶ 44. Northern was a Level-5, maximum security facility, which closed in June 2021, and was previously used to house and manage inmates on AS. *Id.* ¶ 45. The Walker Building of MWCI is used to house and manage inmates on AS. *Id.* ¶ 46.

### 3. Mr. Goode's Incarceration

In October 2016, staff at the Corrigan Correction Center recommended that Mr. Goode be considered for AS due to his serious assault of a DOC employee that resulted in injury. *Id.* at ¶ 48. Based on the seriousness of the assault, as well as his history of disciplinary issues and

assaultive behavior, Mr. Goode was reviewed for AS, and on November 9, 2016, after notice and a hearing, he was authorized for AS placement.[2] Specifically, Mr. Goode was housed at Northern from January 1, 2019 until April 1, 2019, and then again from June 3, 2019 until May 18, 2021, and he was housed at MWCI from April 1, 2019 until June 3, 2019, and then again from May 18, 2021 to the present. *Id.* ¶¶ 51, 62.

### 4. Psychiatric Evaluation and Expert Report

Defendants retained and disclosed Dr. Gregory B. Saathoff, M.D., a board-certified psychiatrist, as an expert in this case. *Id.* ¶ 102. Dr. Saathoff has extensive experience and expertise in prison psychiatry, including conducting mental health evaluations on prisoners subjected to restrictive prison conditions in various correctional facilities, both domestic and abroad. *Id.* ¶ 103; Dr. Saathoff issued an expert report in this case, *id.* ¶ 102, but Mr. Goode denied and/or objected to nearly the entirety of the report, *see* Pl.'s Am. SOMF ¶¶ 105–21.

### B. Procedural History

On February 13, 2020, Mr. Goode filed a Complaint alleging Eighth and Fourteenth Amendment violations against various DOC officials. Compl.

On August 7, 2020, Defendants filed an Answer. Answer, ECF No. 33.

The Court granted various motions for extension of time and revised the scheduling order accordingly. *See, e.g.*, Mot. for Extension of Time, ECF No. 34 (Nov. 3, 2020); Revised Scheduling Order, ECF No. 35.

On April 8, 2021, the parties filed a consent motion for mental examination of Mr. Goode under Federal Rules of Civil Procedure 35. Consent Mot. for Mental Examination of Pl., ECF

---

[2] Mr. Goode admits that the assault occurred but rejects Defendants characterization of it as "intentional." *See* Pl.'s SOMF ¶ 48 ("It is admitted that the Plaintiff was recommended for his assaulted conduct to A/S placement. It is <u>Denied</u> that such conduct was intentional as this is a product of Plaintiff's psychological disorder.")

4

No. 42. The Court granted that motion on April 9, 2021. Order, ECF No. 43.

The parties filed, and the Court granted, various motions for extension of time related to discovery. *See, e.g.*, Mot. for Extension of Time, ECF No. 44; Order Granting Mot. for Extension of Time, ECF No. 47.

On August 10, 2021, Mr. Goode filed a *pro se* motion for an order to show cause for a preliminary injunction. *See* Proposed Order to Show Cause, ECF No. 48. On the same day, Defendants filed an objection to motion, arguing that because Mr. Goode is represented by counsel, his *pro se* filings should be summarily denied. *See* Defs.' Obj., ECF No. 49.

On August 11, 2021, the Court denied the motion for an order to show cause. Order, ECF No. 50.

On November 5, 2021, Defendants filed a motion to depose Mr. Goode. Defs.' Mot. to Take Dep. of Plaintiffs, ECF No. 57. On November 8, 2021, the Court granted that motion. Order, ECF No. 58.

On November 9, 2021, Mr. Goode filed a motion to stay the proceeding in light of the termination of his counsel and to appoint counsel for the limited purpose of representing him for discovery and preliminary injunction. *See* Pl.'s Omnibus Mot., ECF No. 65.

On November 10, 2021, Mr. Goode filed leave to proceed *in forma pauperis*. Pl.'s Mot. for Leave to Proceed IFP, ECF No. 66.

On November 15, 2021, counsel for Mr. Goode filed a motion to withdraw. Mot. to Withdraw, ECF No. 59. The Court granted that motion on November 16, 2021. Order, ECF No. 60.

On November 17, 2021, Mr. Goode filed an objection to Defendants' motion to take his deposition. Pl.'s Obj. to Defs.' Mot. to Take Dep., ECF No. 61. On the same day, Defendants

filed a response to Mr. Goode's objection. Defs.'s Resp., ECF No. 62.

On November 18, 2021, the Court issued an Order modifying the scheduling order in light of the Mr. Goode's Counsel's withdrawal from the case. Order (Nov. 18, 2021).

On November 30, 2021, Mr. Goode filed a motion to amend/correct the Complaint. Pl.'s Mot. to Amend/Correct Compl., ECF No. 64. On December 15, 2021, Defendants filed an objection the motion to amend/correct the Complaint. Defs.' Obj. to Mot. to Am. Compl., ECF No. 74.

On January 5, 2022, the Court granted Mr. Goode's motion to amend the Complaint and denied Plaintiff's motion for appointment of counsel. *See* Order, ECF No. 74.

On March 30, 2022, Mr. Goode filed a motion for a court appointed expert. Pl.'s Mot. for Ct. Appointed Expert, ECF No. 93. The Court denied that motion on April 4, 2023. Order, ECF No. 95.

On October 6, 2022, Mr. Goode filed a motion to withdraw his claims against Defendants Cook, Semple, and Murphy. Pl.'s Mot. to Withdraw in Part, ECF No. 110. On October 14, 2022, the Court granted that motion. Order, ECF No. 114.

On November 18, 2022, Defendants filed a motion for summary judgment. Mot.

On December 15, 2022, Mr. Goode filed an objection to the motion for summary judgment and his local rule 56(a)(2) statement. Opp'n.

On January 9, 2022, Defendants filed a reply. Defs.' Reply to Pl.' Opp'n to Mot. for Summ. J., ECF No. 142.

The parties filed various motions and notices regarding amendments to Local Rule 56(a) statements, and motions for extension of time. *See, e.g.*, Pl.'s Mot. to Am. Local Rule 56(a)2 Statement, ECF No. 143

On February 7, 2022, Plaintiff filed an amended Local Rule 56(a)2 Statements. Pl.'s Am. SOMF.

On February 27, 2023, Defendants filed a sur-reply. Defs. Sur-Reply, ECF No. 153.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of

7

material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

### III. DISCUSSION

Defendants argue that they are entitled to summary judgment because Mr. Goode cannot establish the personal involvement of each defendant in a constitutional violation, and he cannot establish the subjective and objective elements of an Eighth Amendment violation.

The Court will address each argument in turn.

**A. Personal Involvement**

To maintain an action under 42 U.S.C. § 1983, a plaintiff must show that each defendant "was personally involved in the alleged violations of [Plaintiff's] constitutional rights." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). Because "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Defendants argue that Mr. Goode cannot establish the personal involvement of Warden Barone, Warden Mudano, and APRN Reischerl. According to Defendants, although Barone and Mudano served as wardens of MWCI and Northern respectively during parts of the relevant period of Mr. Goode's alleged constitutional violations, both Defendants have now retired. *See* Mem. at 17–18. Therefore, Defendants argue, Mr. Goode cannot establish Wardens Barone and Mudano's personal involvement after their retirements. *Id.* As to APRN Reischerl, Defendants argue that as a nurse, she "was not involved in placing or maintaining [Mr. Goode] on AS, nor was she involved in, or have control over, his conditions of confinement on AS." *Id.* at 19. Additionally, Defendants argue that APRN Reischerl was not "involved in the periodic reviews of his mental health status pursuant to AD 9.4, as such reviews were conducted by a psychologist." *Id.* These undisputed facts establish, according to Defendants, that Warden Barone, Warden Mudano, and APRN Reischerl were not personally involved Mr. Goode's alleged constitutional violation, and as a result, the Court should grant summary judgment on this ground.

In response, Mr. Goode argues that the declarations of Wardens Barone and Mudano

filed in connection with Defendants motion for summary judgment conclusively establish their personal involvement. *See* Opp'n at 11 (citing to Warden Mudano's declaration in which Warden Mudano explained that "[d]uring [her] time as Warden, [she] also served as part of the Northern classification committee, which was a committee that met, once per month, to review and discuss inmates assigned to various restrictive statuses at Northern, including AS." (quoting Ex. I to Defs.' Mot. ¶ 16)); *id.* at 12 (citing to Warden Barone's declaration stating the same). As to APRN Reischerl—relying primarily on declarations filed in cases unrelated to this one—Mr. Goode argues that it is "evident that that Reischerl had direct involvement in the medical/mental health management of Administrative Segregation inmate before, through, and after year 2019." Opp'n at 14. At minimum, Mr. Goode argues, APRN Reischerl had the "ability to communicate with . . . the facility classification committee clinical concerns about [his] conditions of confinement and have them 'adjusted.'" *Id.* at 14. Accordingly, Mr. Goode concludes that Warden Barone, Warden Mudano and APRN Reishcerl had sufficient personal involvement to sustain his claim.

      The Court agrees in part.

      The Second Circuit has defined "'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Gonzalez v. Yepes*, No. 3:19-CV-00267 (CSH), 2019 WL 2603533, at *7 n.13 (D. Conn. June 25, 2019) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

      Defendants' own evidence show that Wardens Barone and Mudano were familiar with Mr. Goode, *see* Defs.' SOMF ¶¶ 73, 87; and that they were members of the classification review committee in their respective institutions, *id.* ¶¶ 73, 87, which met periodically to, *inter alia*,

10

"discuss the conditions of an inmate's confinement [including Mr. Goode] and whether any adjustments would be made, including to privileges and restrictions, based on the inmate's recent conduct, behavior, or needs," Mudano Decl. ¶ 21; Barone Decl. ¶ 24. Wardens Barone and Mudano were therefore personally involved and "had knowledge of the facts that rendered the conduct" complained of allegedly unlawful. *Yepes*, 2019 WL 2603533, at *7 n.13.

APRN Reischerl, however, is not so situated. Defendants have argued—and Mr. Goode does not meaningfully dispute—that APRN Reischerl was not involved in custody decisions, nor was she was member of the review committee. *See* Mem. at 19 ("Reischerl was not involved in placing or maintaining the plaintiff on AS, nor was she involved in, or have control over, his conditions of confinement on AS."). Nevertheless, Mr. Goode argues that APRN Reischerl "had to ability to communicate" with the review committee to have his condition of confinement adjusted. Opp'n at 14. But mere speculation, without citation to admissible evidence, is insufficient to defeat summary judgment. *See Black v. Wrigley*, No. 21-2553, 2023 WL 2591014, at *3 (2d Cir. Mar. 22, 2023) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998))); *see also Anderson*, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

Accordingly, the Court will grant summary judgment as to APRN Reischerl on the ground of personal involvement but will deny summary judgement on this ground as to Wardens Barone and Mudano.[3]

---

[3] Defendants also moved for summary judgment on basis of lack of personal involvement as to Defendants Quiros and Maiga. *See* Mem. at 14–17. In his Opposition, however, Mr. Goode noted that he is no longer pursuing claims against those Defendants. *See* Opp'n at 5 n.1 ("Although defendants name Angel Quiros & David Maiga, the Plaintiff did move to withdraw those claims and again asserts to withdraw those claims."). Accordingly, these

Having granted summary judgment as to APRN Reischerl and Nurse Durko, *see supra* note 3, the Court will next address whether the remaining Defendants—Wardens Barone and Mudano—are entitled to summary judgment on the merits of Mr. Goode's Eighth Amendment claim.

### B. Eighth Amendment Violation

To establish an Eighth Amendment violation, "an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official." *Tuttle v. Semple*, No. 3:17-CV-02037 (JAM), 2018 WL 2088010, at *3 (D. Conn. May 4, 2018) (citing *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015)). More specifically, "[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The Second Circuit has stated that "deliberate indifference" under the Eighth Amendment "means the official must know[] of and disregard[] an excessive risk to inmate health or safety;

---

Defendants, Quiros and Maiga, will be dismissed from this case. *Cf. Maher v. All Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267–68 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) (collecting cases))).

Defendants also construe Mr. Goode's Complaint to be raising a separate claim of deliberate indifference to medical needs against Defendant Durko. *See* Mem. at 7 ("Although the plaintiff's Complaint does not assert a separate Eighth Amendment claim against Durko, it is evident based on his allegations and deposition testimony that he is asserting a deliberate indifference to medical needs claim against her based on her failure to administer his prescription eyedrops on a *single* occasion in January 2019.") Mr. Goode, however, denies that he is asserting such a claim. *See* Pl.'s SOMF ¶ 6. Instead, he argues that defendant "Durko and her co-defendants' combined misconduct violates the 8th Amendment in its totality." *Id.* But Mr. Goode does not allege facts to support Nurse Durko's personal involvement in his custody. Therefore, having granted summary judgment as to APRN Reischerl for lack of personal involvement, the Court will likewise grant summary judgment as to Nurse Durko for the same reason.

the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (alternation in original) (citations and internal quotations marks omitted). And "[e]vidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)).

Defendants argue that they are entitled to summary judgment because the undisputed evidence establishes that Mr. Goode's "conditions of confinement did not deprive him of any basic human need, nor did such conditions otherwise expose him to a substantial risk of serious harm." Mem. at 19–20. For example, according to Defendants, Mr. Goode admits that he was not "deprived of food or adequate shelter," *id.* at 23; that "he received at least one hour of recreation per day, which would generally occur in the outdoor recreation yard," *id.*; that "he was permitted to have in his cell a radio, reading materials, and a tablet, which could be used to access reading materials, videos, games, and other materials," *id.* at 24; and that he was "able to speak with other inmates housed in the surrounding cells, and could also speak to, and interact with, other inmates who attended recreation with him," *id.* In Defendants view, Mr. Goode was therefore not subjected to "austere conditions"—such as lack of stimuli, "complete social isolation[,] . . . the absence of opportunities for social interactions"— which are generally "associated with causing serious psychological deterioration in individuals subject to such conditions for extended periods." *Id.* at 26.

As a result, Defendants argue that Mr. Goode cannot establish an Eighth Amendment violation as his specific "conditions of confinement do not pose a substantial risk of serious harm to his health," nor has he "suffered severe psychological harm as result of his confinement on

13

AS." *Id.* at 25–26.

In response, Mr. Goode does not address Defendants' characterization of his specific conditions of confinement. Instead, he argues that his prolonged confinement in administrative segregation—"more than two thousand one hundred and ninety days"—in and of itself satisfies the objective element of an Eight Amendment violation. Opp'n at 8; *see id.* at 8–10 (relying on various studies, including a 2018 report by the Arthur Liman Institute for Public Interest Law analyzing the psychiatric effects of solitary confinement, to conclude that "the substantial risk of future harm posed by prolonged solitary confinement is not tolerable by contemporary standard of decency"). On this basis, Mr. Goodes argues that Defendants' motion for summary judgment as to the objective element of his claim should be denied.

The Court disagrees.

As an initial matter, Mr. Goode concedes that "the objective element [of his Eight Amendment claim] is not genuinely disputed." Opp'n at 10. Thus, the Court need only decide whether, on this record, he has established the objective element of his claim.

"The Second Circuit has not held that solitary confinement, as a matter of law, violates the Eighth Amendment." *Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at *6 (D. Conn. Nov. 3, 2021). Instead, whether specific conditions of confinement, or a set of restrictions, imposed on an inmate constitute a violation of the Eighth Amendment is an individualized inquiry that "depends on the duration and conditions of the confinement." *Gonzalez*, 802 F.3d at 224. When assessing whether conditions of confinement meet Eighth Amendment standards, the inquiry is whether an individual inmate was deprived basic human needs. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (explaining that deprivation of identifiable

human needs may establish Eighth Amendment violation).[4] In that respect, the Supreme Court has identified the following as the basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (listing food, clothing, shelter, medical care, and reasonable safety as examples of basic human needs); *Wilson*, 501 U.S. at 304.

Here, however, Mr. Goode concedes that Defendants did not deprive him of food, clothing, and the ability to exercise. *See* Mem. at 23; Pl.'s Am. SOMF ¶¶ 53–59. Although Mr. Goode disputes the frequency of mental health and medical staff visits to his unit, he concedes that the visits occurred. *See* Pl.'s Am. SOMF ¶ 65 ("It is admitted that mental health staff tour, but <u>denied</u> that they would tour every first and second shift."). Moreover, Mr. Goode admits that he had "access to the inmate request system, which allowed [inmates] to submit request[s] to see certain staff, including medical and mental health, as needed," *id.* ¶ 68, and that he "had the opportunity, if he chose, to speak to, and interact with, the staff in his unit and the staff who toured his unit, including custody staff, medical staff, mental health staff, and supervisors," *id.* ¶ 69. *See also id.* ¶¶ 69–71 (admitting to interacting with staff, including medical and mental health staff).

Thus, this is a not a case in which Mr. Goode was "incarcerated under a condition or a combination of conditions that resulted in a 'sufficiently serious' deprivation of a life necessity

---

[4] Mr. Goode cites several Second Circuit cases in support of the contention that the Second Circuit has recognized that solitary confinement violates the Constitution. *See generally* Opp'n at 7. But these cases are inapposite as they address solitary confinement as it relates to an inmate's due process rights under the Fourteenth Amendment. *See e.g.*, *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) ("[W]e agree with the district court that Allah's substantive due process rights were violated when he was assigned to Administrative Segregation in October 2010 while a pretrial detainee."); *Kalwasinski v. Morse*, 201 F.3d 103, 106 (2d Cir. 1999) ("Kalwasinski claimed, among other things, that Cerio deprived him of his due process rights at the hearing."). Indeed, the Second Circuit has held that "the standard for deliberate indifference" is not "the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

or a 'human need[]' or posed 'a substantial risk of serious harm' to his health or safety." *Conley v. Aldi*, No. 3:18-CV-824 (VAB), 2020 WL 1333501, at *4 (D. Conn. Mar. 23, 2020) (quoting *Farmer*, 511 U.S. at 834). Instead, as noted above, this record is replete with evidence to support Defendant's assertion that Mr. Goode's conditions of confinement did not violate the Eight Amendment.[5]

Because Mr. Goode fails to point to any evidence to show a "'sufficiently serious' deprivation of a life necessity or a 'human need' or that posed 'a substantial risk of serious harm' to his health or safety," *Jusino*, 2021 WL 5111908, at *6 the Court will grant Defendants' motion for summary judgment.

Even if the Court assumes, however, that Mr. Goode satisfies the objective element of his claim, Defendants would nevertheless be entitled to summary judgment because Mr. Goode cannot show that Wardens Barone and Mudano "personally knew of and disregarded an excessive risk" to his health and safety. *Tangreti*, 983 F.3d at 612 (citation omitted).

First, Mr. Goode does not dispute that throughout his confinement in AS, a "review committee," comprised of prison officials, including mental staff, *see* Pl.' SOMF ¶ 72, 86, routinely reviewed his condition of confinement, *id.* ¶¶ 80, 94. Second, Mr. Goode admits that during these periodic reviews, mental health staff did not raise concerns about his mental health

---

[5] Nor can Mr. Goode establish an Eight Amendment violation based solely on the duration of his confinement in administrative segregation or solitary confinement. First, as the Supreme Court has explained, "the length of isolation . . . [is] not considered in a vacuum." *Hutto v. Finney*, 437 U.S. 678, 686 (1978); *see id.* (explaining that although "the length of confinement cannot be ignored in deciding whether the confinement" violates the Eighth Amendment, "[i]t is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual"); *Gonzalez*, 802 F.3d at 224. In other words, the duration is considered in conjunction with the conditions of the confinement.

Second, and importantly, Mr. Goode's placement in AS or solitary confinement is not permanent. Instead, a classification committee meets periodically "to determine whether [his] classification and confinement on AS . . . continued to be warranted . . . ." Defs.' SOMF ¶ 75, and Mr. Goode does not dispute that these reviews occurred. *See* Pl.'s SOMF ¶ 80 (admitting that his "classification and conditions of confinement on AS were regularly reviewed and discussed").

condition to Wardens Barone and Mudano. *See id.* ¶ 81 (admitting that "[a]t no point during any of the committee's reviews of [Mr. Goode's] confinement on AS at Northern while defendant Mudano served as Warden, were any concerns raised by mental health staff regarding the plaintiff's mental health, or that any of his conditions of confinement posed a substantial risk of serious harm to his health or safety"); *id.* ¶ 97 (admitting the same as to Warden Barone). Thus, the undisputed facts show that Wardens Barone and Mudano were not aware, nor did they disregard, "an excessive risk" to Mr. Goode's health and safety. *Tangreti*, 983 F.3d at 612 (citation omitted).

Accordingly, the Court also will grant Defendants' motion for summary judgment on the basis that Mr. Goode cannot show "a sufficiently culpable state of mind on the part of" Wardens Barone and Mudano. *Gonzalez*, 802 F.3d at 224; *see Tangreti*, 983 F.3d at 616 (holding that "for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it").[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**

SO ORDERED at Bridgeport, Connecticut, this 19th day of May, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] Because the Court has granted Defendants' summary judgment on the ground that Mr. Goode fails to establish an Eighth Amendment violation, the Court need not decide whether Defendants are entitled to qualified immunity.